# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE

| | |
|---|---|
| EARVIN KYLES,  )<br>  )<br>    Plaintiff,  )<br>  )<br>v.  )<br>  )<br>TRG CUSTOMER SOLUTIONS, INC.  )<br>(d/b/a IBEX GLOBAL SOLUTIONS) and  )<br>Joshua Perkins, individually,  )<br>  )<br>    Defendants.  ) | Case No. 3:14-cv-01674<br>Judge Todd J. Campbell<br>Magistrate Judge Joe Brown |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STAY THE PROCEEDINGS AND COMPEL ARBITRATION

### I. Introduction

IBEX has moved the Court to dismiss (or alternatively, to stay) these proceedings pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), and to compel arbitration. Kyles agreed to resolve any claim arising from his employment with IBEX pursuant to IBEX's Direct Dialogue Program and Mutual Agreement to Mediate/Arbitrate (the "DDP Program"), which requires informal discussions, then mediation, and then, if mediation is unsuccessful, final and binding arbitration, rather than through the courts. Kyles' claims in the present lawsuit indisputably arise out of his employment. See Complaint at Doc. Entry No. 1. By filing his lawsuit, Kyles has failed to honor his contractual obligations for which he received valuable consideration. As a matter of law, Kyles cannot pursue his Family and Medical Leave Act

1

("FMLA") and Tennessee Human Rights Act ("THRA") claims related to his employment before this or any other court. IBEX's Motion should be granted.[1]

## II. Brief Summary of the Factual and Procedural History

IBEX hired Kyles as an Inbound Technical Agent on May 11, 2012. Declaration of Ginni Goldsberry ("Goldsberry Decl.") at ¶ 5. During his employment orientation, IBEX provided Kyles with, and gave him the opportunity to review and ask questions about, its DDP Program. Id. at ¶ 6. Kyles acknowledged in writing his receipt of, and agreement to be bound by, it. Id. at ¶ 7, Exhibit 1. The DDP Program is simple, straightforward and mutual in its application, scope and obligations. In exchange for employment, Kyles and IBEX agreed as follows:

> The Company and Employee mutually consent to the resolution, by final and binding arbitration, of any and all claims or controversies ("claim") that the Company may have against Employee or that Employee may have against the Company or its officers, directors, partners, owners, employees[2] or agents in their capacity as such or otherwise, whether or not arising out of the employment relationship (or its termination), including but not limited to, any claims arising out of or related to this DDP Program (this "Agreement") or the breach thereof.

Id. at Exhibit 2. Further, to avoid any ambiguity or doubt, the DDP Program states in all caps and bold:

> ***THE COMPANY AND EMPLOYEE FULLY UNDERSTAND THAT, ABSENT THIS AGREEMENT, LEGAL CLAIMS BETWEEN THEM COULD BE RESOLVED THROUGH THE COURTS AND A JURY, BUT THE PARTIES EXPRESSLY AGREE TO FOREGO THE TRADITIONAL LITIGATION SYSTEM IN FAVOR OF BINDING ARBITRATION.***

---

[1] If the Court finds any disputed material factual issue regarding the enforceability or applicability of the DDP Program, IBEX requests that the Court conduct a hearing to decide disputed facts on the issue of the "making of the arbitration agreement" and its application. See 9 U.S.C. § 4.

[2] Kyles has not served Defendant Joshua Perkins. Regardless, any claim Kyles asserts against Mr. Perkins is covered by the DDP Program. See Broaddus, 2008 WL 4525410 at *2 ("Non-signatories to an arbitration agreement may be bound by or enforce an arbitration agreement executed by other parties under theories arising out of common law principles of contract and agency law.").

Id.

In agreeing to be bound by the alternative dispute resolution process, both Kyles and IBEX preserved all of their substantive rights ("the Arbitrator shall apply the state or federal law which would be applied by a federal court of competent jurisdiction, including laws establishing burdens of proof"), chose a neutral forum in which to resolve their disputes (the American Arbitration Association, in accordance with National Rules for the Resolution of Employment Disputes), and agreed to waive any right to a jury trial. Id. This choice, freely and voluntarily entered into by Kyles and IBEX after full disclosure, is a binding and enforceable contractual obligation on all parties to it.

Kyles has not honored his agreement to arbitrate all claims against IBEX. Instead, he filed a Complaint in the United States District Court for the Middle District of Tennessee. See Doc. Entry No. 1. On September 12, 2014, counsel for IBEX advised Kyles' counsel of the DDP Program and requested that Kyles voluntarily dismiss his Complaint. Kyles did not respond. Having entered into the DDP Program, for which he received valuable consideration and upon which IBEX relied, Kyles cannot now avoid his obligations thereunder. His Complaint must be dismissed as a matter of law and any resolution of his employment claims must occur, if he chooses to pursue them, pursuant to the DDP Program.

### III.    Legal Analysis

The FAA provides that agreements to mediate and arbitrate, like that signed by Kyles, are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. No such grounds exist here. The FAA applies broadly to any dispute "involving commerce," whether in state or federal court. Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56 (2003). In enacting Section 2 of the FAA, Congress declared a

national policy favoring arbitration and required that all courts rigorously enforce such agreements. Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 (1991). Recognizing this legislative mandate, the United States Supreme Court has held that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983); see also Broaddus v. Rivergate Acquisitions, Inc., 2008 WL 4525410, at *1 (M.D. Tenn. Oct. 1, 2008) (Campbell, J.) ("There is a strong presumption in favor of arbitration, and any doubts regarding arbitrability must be resolved in favor of arbitration.")[3]. Moreover, the United States Supreme Court has described the FAA provisions "as reflecting both a 'liberal policy favoring arbitration,' and the 'fundamental principle that arbitration is a matter of contract.'" AT&T Mobility, LLC v. Concepcion, 131 S. Ct. 1740, 1745 (2011) (citations omitted). "Courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." Id. (citations omitted).

The Supreme Court has emphasized that disputes in the employment context are no different than any other under the FAA: agreements to arbitrate employment-related claims are broadly enforceable. See Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 119-20 (2001). Section 3 of the FAA requires a court to stay proceedings if an issue before the court is arbitrable under an agreement covered by the FAA, and Section 4 directs the court to issue an order compelling arbitration if either party fails, neglects, or refuses to comply with the terms of the arbitration agreement. 9 U.S.C. §§ 3 & 4.

In deciding whether to compel arbitration, courts address two "gateway" issues: (1) whether there was an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. See Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84

---

[3] Unpublished opinions are attached hereto.

(2002); see also Walker v. Ryan's Steak Houses, Inc., 289 F. Supp. 2d 916, 922 (M.D. Tenn. 2003). In this case, the answer to both inquiries is "yes."

> A. **The parties entered into a valid and enforceable agreement to arbitrate that covers this dispute.**

Within the FAA's mandate of broad enforceability of arbitration agreements, state contract law principles govern whether the parties have a contractually valid agreement to arbitrate in any given case. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). The requisites for forming a valid contract in Tennessee are well settled. Contracts require an offer, Mason v. Pearson, 668 S.W.2d 656, 660 (Tenn. Ct. App. 1983), an effective acceptance of the offer, Pinney v. Tarpley, 686 S.W.2d 574, 580 (Tenn. Ct. App. 1984), and consideration. Campbell v. Matlock, 749 S.W.2d 748, 752 (Tenn. Ct. App. 1987). As evidenced by its plain language and execution by Kyles, the DDP Program meets the essential elements of an enforceable contract under Tennessee law and similar agreements have been routinely enforced in the Sixth Circuit. See, e.g., Howell v. Rivergate Toyota, Inc., 144 Fed. Appx. 474 (6th Cir. 2005) (affirming district court's dismissal of the plaintiff's claims because he had signed a mandatory arbitration agreement); Parker v. Rich Products Corp., 2014 WL 2442888, at *1 (M.D. Tenn. May 30, 2014) (Campbell, J.); Lewis v. Labor Ready Mid-Atl., Inc., 2009 WL 497692, at *6 (M.D. Tenn. Feb. 26, 2009) (Campbell, J.); Hardin v. Morningside of Jackson, L.L.C., 425 F. Supp. 2d 898, 908 (W.D. Tenn. 2006)).

The case of Seawright v. American General Financial Services, Inc., 507 F.3d 967 (6th Cir. 2007), analyzes the four factors considered when assessing the enforceability of an arbitration agreement: (1) whether the employee's continued employment with the employer constituted assent to the agreement; (2) whether sufficient consideration existed to form a contract; (3) whether the arbitration agreement was illusory; and (4) whether the agreement was

5

an unenforceable adhesion contract. See id. Each of these factors supports enforcement of Kyles' DDP Program.

       *1.     Kyles' continued employment constituted his assent to arbitration.*

Kyles' employment with IBEX constituted his assent to the terms of the arbitration agreement. The Court in Seawright reviewed the enforceability of the arbitration agreement according to the Tennessee law of contract formation. Id. at 972. The written arbitration materials given to the employees in Seawright "clearly stated that continued employment after the effective date of the EDR Program would constitute the employee's acceptance of the agreement to arbitrate. Thus, under Tennessee law, [the employee] expressed a valid assent when she continued to work for [the employer]." Id. Accordingly, the employee's consent "came not from her silence in the face of an offer, but from her performance under the contract– that is, her continued employment." Id. at 973 n.2. The Court, therefore, held that continued employment can and does constitute acceptance. Id. In this case, Kyles agreed that his assent to the DDP Program was a "condition of [his] employment." Goldsberry Decl. at ¶ 7, Exhibit 1. Kyles signed the DDP Program on May 11, 2012, prior to performing his duties for which he was employed by IBEX. Id. at ¶¶ 5,7. IBEX's employment of Kyles was sufficient consideration to make the DDP Program binding and enforceable. His employment and continued employment constituted his acceptance to the DDP Program's provisions. See Seawright, 507 F.3d at 972.

       *2.     Sufficient consideration existed to form a contract.*

Kyles' and IBEX's mutual promises were sufficient consideration to form a binding contract to arbitrate. In Seawright, the Sixth Circuit looked to whether there was sufficient consideration for an enforceable contract. See Id. at 974. Under Tennessee law, "mutuality of

6

promises is 'ample consideration' for a contract. A mutual promise 'in itself would constitute a sufficient consideration.'" Id. (quoting Pyburn v. Bill Heard Chevrolet, 63 S.W.3d 351 (Tenn. Ct. App. 2001)). In Seawright, the arbitration process was binding on both the employer and the employee regardless of who requested arbitration. Thus, the "employer and employee were equally obligated to arbitrate those disputes falling within the coverage of the plan" and "[t]his is enough to ensure mutuality of obligation and thus constitute consideration." Id. Exactly the same is true here. Both parties mutually consented to the DDP Program and agreed to submit any claim against one another to binding arbitration. Goldsberry Decl. at ¶¶ 7-8, Exhibits 1-2. The parties' promises were sufficient consideration for the DDP Program.

       3.      *The parties' DDP Program is not illusory.*

Tennessee requires that a contract not be illusory, meaning that it must impose genuine obligations on both parties. See Parks v. Morris, 914 S.W.2d 545, 550 (Tenn. Ct. App. 1995) ("[I]f one or both parties to a contract have the right to cancel or terminate the agreement, then the contract lacks mutuality and is unenforceable."); see also Howell, 144 Fed. Appx. at 480 (finding mutuality requirement was satisfied simply because agreement required all disputes between the parties be resolved through arbitration). The DDP Program in this case meets that standard because it "can only be revoked or modified in writing signed by the parties" and "shall survive the termination of Employee's employment." Goldsberry Decl. at Exhibit 2. Thus, the parties share a mutual obligation to be bound to the DDP Program.

       4.      *The DDP Program is an enforceable contract in the employment context.*

The DDP Program is not an unenforceable adhesion contract. The Supreme Court has made it clear that "mere inequality in bargaining power [] is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context." Gilmer, 500 U.S. at

32. State law on the enforceability of adhesion contracts applies, and in Tennessee, an adhesion contract is "a standardized form offered on what amounts to a 'take it or leave it' basis, without affording the weaker party a realistic opportunity to bargain, and under conditions whereby the weaker party can only obtain the desired product or service by submitting to the form of the contract." Seawright, 507 F.3d at 975.

As in Seawright, the DDP Program at issue here is not one of adhesion. The DDP Program contains no substantive limitations on Kyles' rights. It also imposes no onerous procedural requirements and is mutually binding on both parties. Kyles had the option of not accepting the DDP Program and could seek employment elsewhere. Instead, Kyles agreed to arbitration and IBEX employed him. The parties have a valid and enforceable agreement to arbitrate the claims in dispute. See Id. at 976; see also Johnson v. Long John Silver's Rests., Inc., 414 F.3d 583, 584 (6th Cir. 2005); Howell, 144 Fed. Appx. at 480; Cooper v. MRM Investment Co., 367 F.3d 493, 500-01 (6th Cir. 2004) (upholding arbitration agreements).

    **B.    Kyles' claims falls within the scope of the agreement to arbitrate.**

Kyles asserts that IBEX and Mr. Perkins violated the Family and Medical Leave Act ("FMLA") and Tennessee Human Rights Act ("THRA") when it terminated his employment. See Doc. Entry No. 1. The DDP Program covered any claim arising out of Kyles' employment or termination of his employment and expressly covered the two claims he pled in the Complaint:

> The claims covered by this Direct Dialogue Program ("Program") and the DDP Program ("Agreement") pertain to **any disputes arising out of your employment or termination of employment** with TRG CS ("Company") (including claims against employees, Officers, and Directors of the Company and its affiliates arising out of or related to any disputes, and include, but are not limited to, the following: claims for wages or other compensation due; claims for breach of any contract or covenant (express or implied); tort claims; claims for discrimination (including, but not limited to, discrimination based on race, gender, sexual

8

Case 3:14-cv-01674   Document 10   Filed 09/19/14   Page 8 of 10 PageID #: 37

orientation, religion, national origin, age, pregnancy, marital status, or medical condition, handicap or disability; **including any claims covered by** Title VII of the Civil Rights Act of 1964, the ADA, the ADEA, **the FMLA** and the FLSA); **claims for retaliation**; physical, mental or psychological injury, (arising out of your employment or termination of employment); claims for benefits (except where an employee benefit or retirement plan specifies that its claims procedure shall culminate in an arbitration procedure different from this one); claims for violations of local laws governing employment relations; **and claims for violation of any other federal, state or other governmental law, statute, regulation, or ordinance**, except claims excluded below.

Goldsberry Decl. at Exhibit 2 (emphasis added). Accordingly, Kyles' claims are covered under the DDP Program. See Howsam, 537 U.S. at 84.

## IV.  Conclusion

Kyles agreed to pursue all disputes arising out of his employment with IBEX through mediation and, if mediation is unsuccessful, through final and binding arbitration. The obligations in the DDP Program are reciprocal. Kyles' agreement to arbitrate with IBEX is valid, covers the disputes raised in this lawsuit, and should be enforced. Mediation and arbitration, rather than a court of law, are the appropriate and chosen forums for resolution of Kyles' claims. IBEX's Motion should be granted and this case stayed pending mediation, and if unsuccessful, arbitration.

      s/ K. Coe Heard
      Mark W. Peters (BPR #018422)
      K. Coe Heard (BPR #029338)
      WALLER LANSDEN DORTCH & DAVIS, LLP
      511 Union Street, Suite 2700
      Nashville, Tennessee 37219-8966
      (615) 244-6380 (telephone)
      (615) 244-6804 (facsimile)
      mark.peters@wallerlaw.com
      coe.heard@wallerlaw.com

      *Attorneys for TRG Customers Solutions, Inc. d/b/a IBEX Global Solutions*

9

Case 3:14-cv-01674   Document 10   Filed 09/19/14   Page 9 of 10 PageID #: 38

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed via the court's electronic filing system upon the following:

Allen Woods, Esq.
Law Offices of Woods & Woods
P O Box 128498
Nashville, TN 37212
Email: allen@woodsattorneys.com

Cheyanne K. Kinghorn, Esq.
Kinghorn Law, PLLC
3200 West End Avenue
Suite 500
Nashville, TN 37203
Email: ckk@kinghornlaw.net

on this the 19th day of September, 2014.

s/ K. Coe Heard

4848-2230-3518, v. 2

10

Case 3:14-cv-01674   Document 10   Filed 09/19/14   Page 10 of 10 PageID #: 39